Good morning. Our first case is number 23-1024, United States versus Davitashvili. Ms. Horn. Good morning and may it please the court. My name is Abby Gell-Horne and I represent the appellant Davitashvili. I'd like to reserve three minutes for rebuttal, please. Granted. Thank you. Your Honor, it involves the parameters of the true threat's exception. The jury in this case was instructed that they could convict Mr. Davitashvili of a threat to kill others. This is not a true threat under the First Amendment because it is not directed at a particular individual or group. This court should remand for a new trial without the unconstitutional theory. Where is there any authority that suggests that to be a true threat, such a limitation as your comment just exists, that is, you said because it was directed toward a group, there's nothing that would require that the allegedly threatening language be directed to a person or a named person or to have the degree of particularity your statement suggests, is there? Judge Smith, this comes from Virginia versus Black, which is the landmark case defining true threat when the Supreme Court said it must be directed at a particular individual or group. We're not saying that that group has to be, you know, as narrow as one individual or even a few individuals. So is that what it all comes down to as far as the part of this threatening language, not that directed to the spouse, but the lack of definition or perhaps, better put, the lack of particularity as to the group? Exactly. On the merits, there's no particularity at all. The threat to kill others without any particular group identified is... Well, we had previously named people in telephone conversations with her, hadn't we? That's what the government argues on appeal. On appeal, the government has... But wasn't there testimony to that effect? But that's the issue. The court, this court on appeal and the government on appeal cannot go looking and cherry-picking through the evidence to try to find out who he meant. Mr. Dasvidashvili was charged and the jury was, most importantly, instructed that they could convict of a threat to kill others. They were never told that they had to find a particular group or friends or family or acquaintances or Vaha or Pele or pretty much any name that came up during the trial is the theory on appeal. Why was that necessary, that they'd be identified that way? Because, Judge Derecka, without identifying a particular group, there's an instructional error. The jury had to be told that they had to find a particular group under Virginia v. Black and they were not so instructed. They were told they could convict of a threat. The testimony did delineate names, as Judge Smith said. Right, so switching that on appeal where it wasn't in the jury instruction would violate the right to a jury trial, the Sixth Amendment, and due process. The Supreme Court has said this for decades, going back to Don and McCormick, and most recently in the Buffalo Billions case, Simonelli and Percoco. Simonelli, for example, the right to control information on appeal. They said, well, look at the record. They could have found that there was a property interest in the state contract. The Supreme Court rejected that and said, you can't go pointing us to the record on appeal. That was a question for the jury. The same thing in Percoco. In that case, the honest services fraud theory at trial was rejected because the individual, the right, it was a dominating control theory and on appeal they come in and say, well, he would have been back in office. Look at the record. We see that he was back. He would have been a public official. They said, the jury was never asked to decide that question. That wasn't in the jury instructions. You can't switch it up on appeal. This goes on. What about the jury instructions in this case? How, if at all, are they problematic? Yes, Your Honor, because- They specifically mentioned Volosevich. This isn't a case where the jury instruction in the verdict form just said to kill people, threaten to kill people. It specifically mentions her by name and then adds and others. Right. So Judge Hardiman, that's why it's a Skilling-Yates claim. So when there's a particular kind of jury instruction error when the government proceeds on two alternative theories and one of them is legally invalid. And that's what we have here. We don't challenge the validity- Is that what Turner advises us, though? Pardon me? I thought Turner said the opposite of what you're proposing. I'm not sure of the citation, Your Honor, and I apologize. The distinction that the government argues is the Griffin case, which draws a distinction between alternative theories, one of which is legally invalid, which is what we have here. And that can be challenged on appeal. And the Griffin line of cases where one of the theories is factually insufficient and that cannot be challenged. Is this legal as opposed to factual? It's absolutely legal. Griffin itself says that what legal means is unconstitutional. And this goes back to Stromberg. The beginning of this line of cases was about raising a red flag to protest the government. That was a First Amendment violation. And that alternative theory was unconstitutional. And the remedy is a new trial without the unconstitutional theory. If I could turn to the issue of prejudice, which I think is probably more contested perhaps than the merits in this case. The issue here is not a preponderance. This court made clear in Payano that the issue is whether this court can be completely confident the jury wouldn't have convicted on the unconstitutional theory. And the court also can point out that a hung jury is a different result. This jury did come back and say it was deadlocked. It received an Allen charge. And as the Second Circuit pointed out in Jean-Baptiste, this suggests that to the jury, which is what matters here, this was a close case. It's not about convincing the court. It's about what this jury would have done. And on Prong 3, this court is open-minded about the inferences a jury could have drawn at trial. For example, in the Wright case, that was another skilling jury instruction error. The question was, you know, the valid bribery theory. And the court said, well, the evidence is sufficient but not overwhelming. The jury could have thought the person who made the bribe was just being a good friend. I don't know if that would have convinced the court. Isn't it highly unlikely that this jury could have found that your client was guilty of killing others who are unspecified in the charge and in the verdict form, while finding him not guilty of threatening to kill Volosevich? I'd love to answer that question, Judge Hardiman. So this goes back to Alonis, which was really a groundbreaking decision, where the Supreme Court said that not only does the government have to prove what the statements were objectively to a reasonable person, they also have to get into the mind of the speaker, who is an unreasonable person. We know, Alonis, but I don't think you've answered Judge Hardiman's question. Really, he's asking about the specifics of this case, the evidence in the case, directed, evidence of threats directed at her, evidence of threats directed against a group. Yes, Judge. Doesn't it make it very unlikely that given what the record shows here, this man said, the language that was used, isn't it hard to say that the jury would not have convicted? I'm sorry, Judge Hardiman, I just didn't feel it. I welcome the assistance. I didn't feel the answer was responsive to what you asked. I'll try to be responsive. And I do think there's a very important distinction between the Volosevich theory and the threat to kill others theory. Remember, the jury was told first that they had to consider the reaction of the listener when they're trying to get into Mr. Dostoevsky's mind. And what did Volosevich do? She doesn't report this for a year. She keeps in touch with Mr. Dostoevsky. These are hundreds of text messages going back and forth. The jury is also told to consider the context. The context of their relationship, I'm not here to defend it. It's vile. It's reportedly abusive. He talks to her like this all the time. The jury saw Volosevich on the stand. And what they could have found, based on her demeanor, which we don't know, is that the feedback loop here, the message she was sending to him, was that she wasn't taking this seriously. You can't- I don't understand how the delay works in your favor when she presumably thought he couldn't harm her because he was back in Georgia. And she acts promptly when she learns that he's coming back to Philadelphia. Well, wasn't that- That makes, you know, the most logical inference to draw is that she wasn't terribly afraid of what he might do to her while he was halfway across the world. But as soon as he was coming back to the United States, he presented a real risk to her. Isn't that the obvious inference to draw? I disagree. Because remember, we're getting into the mind of the unreasonable person. Mr. Desvetosvili is the unreasonable speaker here. And we have to understand what's in his mind. The feedback he's getting is this isn't being reported. Contrast this with- What do we have to understand about his mind? What does the law, what does the constitutional law require? Well, this is why Alonis was so controversial. It says it's, you know, and Justice Barrett said this in her dissenting counterment, the delusional speaker could get off. And the Supreme Court said, we understand that and that's okay. Well, I'm less interested in what a dissent and what a dissenter says than I am in what we're looking at here and what test applies. And you're talking about Mr. Desvetosvili being unreasonable. I'm just not sure what the purpose of that is. What are you getting at? Right, because he has to know what his words mean. And he is delusional about his relationship with Velocevic. Yes, but he reckless, doesn't he, for the government to prevail here? What under 875C he has to be knowing. And that's, the jury was instructed that at 710 and 712. The gentleman made that pretty clear, didn't he? The most recent- Mr. Desvetosvili is talking about his grapefruit being poisoned. He's talking about Velocevic being a KGB agent. This is a person who's deluded. Does he say you're a KGB agent or does he just use that as a kind of nickname for her? Well, I think this goes- According to the text that we have. The jury who saw this could think he doesn't mean anything that he's saying. These are not, in his mind, in his delusional mind about his relationship, these are not true threats. In contrast, this with the threat to kill others theory. Which is very different because it's spoken against a backdrop of news about, frankly, mass shootings, which is very scary to the jury. So this court said in Alanis III, we have to consider that sensitive context. Is a jury really going to say he didn't know someone would take this seriously? When we're talking about a threat about a mass shooting, there's a different sense there, the way the jury receives that. The jury in this case could have said, I don't know about this relationship. This is dysfunctional in both ways. These people talk horribly to each other. I don't know if Davit Dishman- And that's the kind of jury assessment that leads to a not guilty verdict. And here, apparently the jury took it seriously when he wrote things like, I am not going to leave your DNA. And she, on the witness stand, testified that that meant, she took it to mean that he was gonna kill her family and leave no DNA of ours. If the jury doesn't believe that, then presumably he's not guilty. That's why the issue is prejudicial, because the jury could have said, I don't know about your threats against her. This is completely dysfunctional. But when you threaten a mass shooting against the backdrop of our society, there's no Alanis defense for that. And when you say to your marital partner something like, I cannot control myself anymore, in the context of the other statements that have been made, that would likely have a pretty profound impact on a jury, don't you think? Well, we don't know. This is why Alanis was so groundbreaking, is because- What we know is what the jury verdict was. We have a general verdict and an invalid theory. We have one valid theory and one unconstitutional theory. And the question is whether the court can be completely confident under Peano that the jury didn't convict on the invalid theory, which was completely inflammatory, which was against a backdrop of an extremely sensitive topic. There's a reason the government wanted both of these theories. And that's because they had doubts about their Velocevic theory. They had a witness on the stand that they didn't know how they would come across. And that's why up and down from the beginning of the case to the end, they kept giving the jury both options. This is a question I intended to ask the government, but I'll ask it to you as well. Should the government have charged in two separate counts under the statute here? Could they have? They should have only charged one theory. No, they should have charged only the theory against Velocevic. That would have been a clean case. Inexplicably, the government basically shot themselves in the foot by also including protected speech. They gave the jury a second option to convict on threats to kill others. You're answering my question by saying what the result would be. I'm simply talking about charging. I think that would have been a duplicity problem if they broke them into separate counts. Thank you. We'll hear you on rebuttal, Ms. Warren. Thank you. Mr. Zaleski. May it please the court, good morning. My name is Tom Zaleski. I'm here on behalf of the United States. I would like to first start off by going back to the time in the record when this very issue was being discussed by counsel. And when defense counsel, trial counsel in this case, not only did not object to the instruction, but actually embraced the instruction, when the court asked about this specific instruction, counsel said, no, I agree with the court in its totality of this charge. All right, but that just gives us a standard of review. Correct. Plain error. Yes, that is correct. And on plain error, I would like to go through each of the parts of plain error to make my case why the defense in this case cannot meet their burden of establishing that plain error occurred. First, was there error? And I would submit there was no error in the instruction. If you look at the instruction, and I can read it out loud to remind the court, that when Judge Kearney instructed, he said, to find the defendant guilty of this offense, you must find the United States proof each of the following four things beyond a reasonable doubt. First, that the defendant not only transmitted a communication, he actually said the defendant's name. Second, that the communication he sent, if you find he did, contained a threat to kidnap or injure a person or a group of people. Now, that's the issue here. And the propriety of that charge is unquestioned, because if you were to look at the case of Virginia v. Black, you would find that, in fact, the Supreme Court themselves used that very language after they first state, and if I can quote the court, they say at first that when they're talking about the issue of what the standard should be under Virginia v. Black, they state specifically, first, they mention a particular group, pardon me, a particular person or group of people. But then the court continues when they're defining the standard, and they state the following, that, pardon me, Your Honor, court's indulgence, that the speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threat and violence will occur. Intimidation, in the constitutionally prescribable sense of the word, is a type of true threat where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death. Now, what's this appeal about? It's about... Maybe I'm oversimplifying it, but that tells me simply that the threat could be lodged against one or against many. Isn't that what that means? Yes, but they... But a group of persons, group of persons is what the court uses, and, pardon me, Your Honor... Right. The group of persons could include two, five, ten people that are gathered together or live in a house or go to a certain place. But this indictment, strangely, at least to me, charged the defendant with making threats to injure, maim, and kill O.V. and to kill others. Are we supposed to take that and as an or? Did the jury have to find that he was guilty of threatening to kill her and others? Or was it sufficient for the jury to find that he threatened to kill only her or only others? The jury could have had... Our position is the jury could have found that... Or other people. Why did the indictment say and? Well, and typically includes, and I asked the court in the record, I asked the court for an explanation of and because it typically includes the disjunctive and... That was several times, in fact, didn't you? There were several... There were several discussions about the issue. Yes, Your Honor. Yes. Could you explain why you interceded in that way and what was behind your... In the use of and or as Judge Cardamon's... At the time, at the time, Your Honor, my concern was that the jury would feel they had to find both. And it was not necessary for the jury to find both threat... That there was a threat to both in order to find the defendant guilty. One or the other would be sufficient because, as I stated in the brief, that we're talking about here is factual theories and not legal theories. And in this particular matter, the defendant could have obviously found one or the other. But in... Actually, is your adversary correct that you could not have filed, you could not have drafted an indictment containing two counts here as opposed to the one count that you proceeded upon? Well, the messages all took place on one day and one string of messages. And in fact, when the defendant was threatening others, the 10 to 15 people the other mentioned... I understand that's a factual recitation, but it doesn't directly answer the question. He includes her. And so they were both threatened at the same time in essence. And so therefore, that's why we charged both. Now, obviously, most of the evidence in the case was directed or focused on her. She was the source of the information. It was her that actually was the one that explained the messages, explained the context of the messages. So you wanted tactically at trial the opportunity to induce evidence of threatening statements being made as to someone other than her, a group perhaps, as it alleged here, to really buttress your factual case as to threats against her. I mean, that was the tactical reason for it, apparently. Well, I would respectfully disagree, Your Honor. Well, you don't have to disagree. You know what was intended. I don't. So I'm trying to... The intent was simply that we felt that he was also threatening, as we explained on our brief, a lot of other people that were threatened before, that he talked about, that he mentioned in telephone calls to her, that he named to her. And in fact, the agent expressed his concern about this particular threat when he testified because they were concerned that he was not only threatening her physically, but also that he was posing a threat to other people. And these were people, for instance, as I mentioned in my brief, were in their circle of acquaintances and friends. In fact, I mentioned in a footnote that the victim, the female victim, the wife, I'll call her to cut to the chase, the wife actually could not get anybody to pick up paperwork or take paperwork over to the defendant at the time. And she had to go to the actual work site in order to safely turn over some documents after she left the apartment in November 2019. I also would like to... Excuse me. Does the Turner line of cases apply here or are we looking at Skilling and Yates? The case that's... I would respectfully submit the case that nails this issue is the Hedgepeth versus Polito case, Your Honor. And in that particular case, which is not mentioned by the defense, in Hedgepeth versus Polito, it talks about how... It talks about an instructional error arising in the context of multiple theories of guilt. In this case, there are two theories of guilt that are factual in our position and where the court found that instructional errors, so long as the error at issue does not categorically vitiate all the jury's findings, such as when there's an erroneous reasonable doubt instruction, which would be a structural error. An instructional error arising in the context of multiple theories of guilt no more vitiates all the jury's findings than does admission or misstatement of an element of the offense when only one theory is submitted. I mean, what the court's talking about here is this is not a case where there's a... Even though First Amendment is being discussed, this is not a case of a structural error. This is simply a case where there has been multiple theories of guilt posited. We believe that district court did not err in its instruction. And all the district court did, incidentally, was restate the indictment before it instructed the jury pursuant to Virginia v. Black. And that's what... It's at issue here. The defense is actually taking issue with the fact that the word particular was absent in the instruction and even concede in their reply brief that had that word been in there, we wouldn't be in this situation. But the fact is, is that they are basing their entire appeal on this fact that the word particular was not mentioned. Our position is the natural meaning of a group of persons is inclusive of the word particular. What makes a group a group is it's particular by definition. Okay. But a group in and of itself and the invocation of that very word isn't enough in a context like this, is it? Well, it may not be, but that's a factual finding for the jury to make. You think you'd be entitled to get that to a jury if that was the only thing that the declarant said? A group? Well, no. But the declarant did not say that. That's what I'm getting at. That's a starting point. So is it a major issue in this case and something that we should reach that some measure or degree of particularity as to who comprises that group or who is a member of that group is somehow included within the language that constitutes the alleged threat? Well, there is evidence of that in the trial, as I believe Your Honors had mentioned earlier. My question was more in the abstract than what is here, because I asked in connection with what we ought to say in a decision. Well, in this particular case, this all goes to a – this falls under the Griffin case, where this is a question for the jury, the factual analysis. This is a factual issue that we're talking about. This is not two different legal theories, Your Honor. And under Griffin, the court, Justice Scalia wrote about this is an issue that can be left to the juries as to whether or not the evidence was sufficient as to that fact – as to the issue of whether a group was threatened in this case, a group of persons. Now, we say others in our indictment, but then we go into the record. If you go into the record, there's lots of individuals that can be included as part of this group. I would like to – Is that a way of saying that the others don't need to be specified in the indictment or in the verdict form, but they do need to be explained at trial? For example, you can stick with others in the indictment, but at trial you have to say, well, the others are people at the pharmacy or Pele and friends. Is that what you're getting at with your sufficiency of the argument? Yes, I mean, I am, Your Honor. And what I'm trying to say is that there was an abundance of evidence for the jury rationally to conclude that the people that he was referring to when he was also referring to her as a member of this group were the people that he was constantly complaining to her about, the people that he had a list for. And we don't have to identify these people for the jury to find that there's a threat. It can be a number of people in this group of 10 to 15. When you say identify, do you mean name? Name. I mean, you don't have to name them. I don't have to name them. You have to give some shape, don't you? Some degree of definition. I think we group. I do, and I think we did in our evidence in this case. And that conclusion can be inferred from all of the people that were discussed during the course of the victim's testimony, such as her family. And I assume the text that was transcribed of what Mr. Davitesvili actually said. Yes, Your Honor, because he does even mention someone with a derogatory name, this person Pele, in the course of that text. And he was a friend of his, according to the evidence, too, wasn't he? Yes. Yes, but he also referred to that friend with a vulgarity that I won't repeat as well. But I should also add that this error that is cited by the defense is not a plain error. It's not obvious at the time that this was an error, if the court were to find that the judge misinstructed the jury. Because, for instance, they don't offer any case law that suggests that the absence of the word particular renders the instruction. That's a big reason why I'm inquiring here, because we don't, among the cases that we have, have much in that regard. So going forward, don't we need to try to give it shape of some kind, definition of some kind, particularity of some kind? Well, I would submit that it's not necessary in this instance, because the fact is that the way the judge instructed the jury in this case was proper, and it was pursuant to Virginia v. Black. The only thing was that the word particular was absent, but particular is implied when he states a group of persons. Now, let me ask you about the Fifth Circuit panel decision in O'Dwyer. There the court said it wasn't a true threat when the defendant sent a message to court staff that said, quote, a number of scoundrels might be at risk if I do become homicidal. Well, that can be distinguished from the case here, Your Honor, because in this case the defendant actually was talking about 10 to 15 of you, and he's saying that to the victim in the context of citing all types of situations throughout the testimony where he was accusing her of poisoning her with one fella, he was accusing her of conspiring against him with people at his job. Isn't the answer really that the language, or rather the reasoning in O'Dwyer, looked to the conditional nature and the hypothetical nature, and that that is not really present in your case here? Well, there was no conditional aspect or character to the nature of this threat. It was direct. That's what I'm asking. It was a promise that he was going to do this. There wasn't anything conditional in the threats made by the defendant here, unlike the case in O'Dwyer. And I notice that my time is up, unless Your Honors have any other questions. Thank you very much, Mr. Jalewski. We'll hear Ms. Bourne's rebuttal. Thank you, Your Honors. There's a real due process problem with the notion that the government can indict a case, instruct the jury on it, and then come in later and say, this is who the victim was, look at the trial record. That's an entirely different trial. The defendant, for example, in Dunn, was indicted on false statements in September. You can't come in a trial and say, oh, we actually meant false statements in October. Look, they're obviously false. The other issue that we have here is the particularity argument that the government is making has dramatic implications. This would be a huge expansion of the true threats exception. They have no prosecution. There is no such case where a statement with no particularity element at all is available. Well, let me challenge you on that a little, because in Kahn, the Seventh Circuit found a true threat when the defendant threatened, I think it was, the entire loop of Chicago, which is a rather large area. And then in Stevens, one of our sister circuits said it was a true threat when the defendant threatened, I think, the entire Tulsa Police Department. Those are both vastly larger groups of people than the 15 or so that are mentioned by your client, some of whom are actually mentioned by name. The problem, Judge Hardiman, is that the jury was instructed in this case that they could find a threat to kill others, unspecified, unparticularized. That was the question for the jury. We are not here to say that a true threat wouldn't encompass a threat against a building or a particular employer or even a neighborhood. All of that, we have no problem with that. What we have a problem with is coming in to say others, people. What the government said 12 times in their closing or more was that this was a threat against others, this was a threat against people, this was a threat against other people. And that would be a dramatic expansion. Well, but don't we have to take that in context? Are you suggesting that in a closing argument, the prosecutor can't use general terms to identify the specific individuals who were at issue in the trial? Well, that seems like a strange way to hamstring a lawyer in litigating a case. It closed exactly the same way it charged the case, others. They never specified them. Well, but everyone knows who the others are. The others were talked about throughout the trial. The others are coworkers. The others are Valesovich's family members. The others are Pele. We know who the others are. We don't have to speculate. That's exactly what the Supreme Court said in Simonelli. They said, we know that you got government contracts, and that's property. But you can't go back and cherry pick from the record that way. Mr. Deschutes really didn't defend this trial on, well, he couldn't have meant Pele. Let me explain. Pele's my friend, and I would never have talked about him that way. That wasn't the trial because that's not how it was indicted, and that's not how it was charged. Think about this also from the point of view of all of our speech, for example, on the Internet. There is so much heated speech that takes place without any particularity. Right. The number of statements that I could pull up now on TikTok or on Truth Social or on the social media platform X that involve threats without any particularity are probably numbering in the tens of thousands. And those are not true threats because we have a right to free speech in this society. And because of that, the Supreme Court has required breathing room, has required that we not chill the ability of everyone to speak, that we threaten people with a felony conviction with imprisonment. Mr. Deschutes really has served his time. The implications for him in this case are almost nil, but the implications for all of us are extremely great. Do you disagree with the government's characterization of the Griffith case? Yes, the government in their brief says there's a distinction between a factual and a legal theories at trial. That's not the test. The test is the appellate theory. In this case, the appellate theory is that one of the alternative theories of prosecution violated the First Amendment. So that's a legal claim. Good. Thank you. Thank you, Ms. Horn. Thank you, Mr. Zaleski. The court will take the matter under advisement. Thank you, Your Honors.